UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNIMAX COMMUNICATIONS LLC,<br>                Plaintiff,<br>v.<br>T-MOBILE USA INC,<br>                Defendant. | CASE NO. C23-01830-KKE<br><br>ORDER GRANTING MOTION TO DISMISS |

Unimax Communications LLC ("Unimax") sues T-Mobile USA Inc. ("T-Mobile") for over $27,000,000 in damages allegedly resulting from the improper cancellation of three sets of purchase orders for mobile phones. T-Mobile now moves to dismiss, arguing that the parties' contract expressly reserves T-Mobile's right to cancel purchase orders without limitation and without additional cost. Because the Court agrees that the cancellation falls squarely within T-Mobile's contractual rights, Unimax's breach of contract claim fails and cannot be amended. Unimax also fails to plead its tort claims. But because the Court is not persuaded that amendment of the tort claims is futile, the Court grants Unimax limited leave to amend its complaint as to the intentional interference with an economic advantage and misrepresentation claims.

**I.   BACKGROUND**

Unimax and T-Mobile entered into a Master Service Agreement ("MSA") with an effective date of May 28, 2021, wherein Unimax would supply products, as described in a "Product

ORDER GRANTING MOTION TO DISMISS - 1

Supplement," to T-Mobile.  Dkt. No. 1-1 at 3, 74.  The MSA includes multiple addenda and attachments, including the Original Equipment Manufacturing and Supply Addendum ("OEM").  *Id.* at 26–47.  The OEM provides detail on the "specific terms and conditions covering the manufacturing and supply of Products by [Unimax] for and to T-Mobile." *Id.* at 26.  In general, the purchase process requires Unimax to submit a Product Supplement, identifying the product, purchase price, and any specific requirements or terms; T-Mobile can then submit a Purchase Order ("PO"), identifying the product/SKU, payment terms, and delivery date and location; and Unimax can choose to accept the PO or not depending on the circumstances.  *Id.* at 29–30 (OEM § 3); Dkt. No. 1 ¶¶ 3.5–3.6; Dkt. No. 17 at 8.  One of the provisions in the OEM states:

> **(c) Modifications to Purchase Orders.** T-Mobile will have the right, without penalty, additional cost or liability, to make changes to any Purchase Order delivered to Supplier including, without limitation, cancelling or moving a Specified Delivery Date. However, changes requiring volume increases shall require a new Purchase Order issued [sic] and will require separate confirmation of Supplier. Change requests must be made in writing (the "**Modification Notice**") and delivered in the same manner as a Purchase Order.

Dkt. No.1-1 at 30 (OEM § 3.1(c)).  Finally, T-Mobile will "remit all undisputed Charges" to Unimax within 90-days "after the date that an invoice is uploaded into T-Mobile's accounts payable system" and "[a]cceptance [of the product] by T-Mobile shall be a condition precedent to the right of Supplier to receive payment in full." *Id.* at 4 (MSA § 2.2(a)).

Between May 2021 and December 2021, T-Mobile issued multiple POs to Unimax for U696CL mobile devices.  Dkt. No. 1 ¶¶ 3.7, 3.8.  This dispute arises from POs dated September 2021, November 2021, and December 2021.  Dkt. No. 1-1 at 89–134 (providing copies of the cancelled POs).

In June 2022, T-Mobile informed Unimax "of reports of possible power issues" with the U696CL devices that would require an investigation and a hold on shipping further devices.  Dkt.

ORDER GRANTING MOTION TO DISMISS - 2

No. 1 ¶ 3.10. From that notification through October 2022, the parties exchanged information, analyzed the devices, and determined "there was a Power Amplifier Issue." *Id.* ¶¶ 3.11–3.21.

In January 2023, during the ongoing investigation, Unimax met with "Casey Ryan, Principal Product Manager at T-Mobile and Brett Madison, T-Mobile OEM Senior Manager" at a tradeshow in Las Vegas. *Id.* ¶ 3.24. Unimax alleges that "T-Mobile representatives represented to Unimax they were going to [be] moving forward with the PO's for 427,560 U696CL mobile devices." *Id.* After this event, T-Mobile continued to request additional information and testing. And, finally, on May 4, 2023, "T-Mobile cancelled the outstanding POs for 427,500 Unimax U696CL devices." *Id.* ¶ 3.36 (cancelled POs attached at Dkt. No. 1-1 at 88–134). On May 16, 2023, T-Mobile sent a letter confirming cancellation of the 427,500 U696CL phones and citing to OEM section 3.1(c). Dkt. No. 1 ¶ 3.37, Dkt. No. 1-1 at 136.

Unimax alleges T-Mobile then purchased "Unimax's competitor's devices" and that Casey Ryan then "started working for Quality One Wireless" and was "instrumental in awarding the contract to Quality One Wireless."[1] Dkt. No. ¶¶ 3.44–3.45.

Unimax filed the complaint on November 28, 2023, alleging four causes of action: declaratory judgment, breach of contract, intentional interference with prospective economic advantage/inducing breach of contract, and fraudulent and/or negligent misrepresentation. Dkt. No. 1 ¶¶ 4.1–4.25. T-Mobile now seeks to dismiss each of these claims. Dkt. No. 17.

---

[1] Though the complaint alleges that Casey Ryan went to work for Quality One Wireless, Unimax's briefing refers to Casey Ryan going to work for a company called "Schok." Dkt. No. 20 at 4, 12.

ORDER GRANTING MOTION TO DISMISS - 3

## II. ANALYSIS

### A. Jurisdiction

The Court has subject matter jurisdiction because the amount in controversy exceeds $75,000[2] and the parties are citizens of different states. 28 U.S.C. § 1332. T-Mobile is a citizen of Washington and Delaware. Dkt. No. 1-2; *see* 28 U.S.C. § 1332(c). Unimax is a citizen of California. Dkt. No. 24; *see Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("[A]n LLC is a citizen of every state of which its owners/members are citizens."). "[F]ederal courts sitting in diversity apply state substantive law." *Cuprite Mine Partners LLC v. Anderson*, 809 F.3d 548, 554 (9th Cir. 2015). The parties agree the MSA and OEM Addendum are governed by Washington law. Dkt. No. 1-1 at 13.

### B. Legal Standard

T-Mobile seeks to dismiss each of Unimax's four claims under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 17 at 6. Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). At this stage, the Court accepts as true all factual allegations in the complaint and construes them in the light most favorable to the nonmoving party. *Gonzalez v. Google LLC*, 2 F.4th 871, 885 (9th Cir. 2021), *rev'd on other grounds by Gonzalez v. Google LLC*, 143 S. Ct. 1191 (2023) (per curiam). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* Fed. R. Civ. P. 8(a)(2) (a plaintiff must make a "short and plain statement of the claim showing that the

---

[2] Unimax alleges over $27,000,000 in damages. Dkt. No. 1 ¶ 3.42.

ORDER GRANTING MOTION TO DISMISS - 4

pleader is entitled to relief"). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

If a complaint is dismissed for failure to state a claim, leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect," or if the court can "conceive of facts that would render plaintiff's claim viable and [can] discern from the record no reason why leave to amend should be denied." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988) (cleaned up).

The Court will address each cause of action in turn.

### C. The Breach of Contract Claim Is Dismissed.

In Washington, a breach of contract claim requires a plaintiff to show proof of a valid contract, a breach, and resulting damages. *See Lehrer v. Dept. of Soc. and Health Servs.*, 5 P.3d 722, 727 (Wash. Ct. App. 2000). The question before the Court is whether Unimax has sufficiently alleged a breach.

Unimax alleges "T-Mobile materially breach[ed] its contractual obligation owed to Unimax by failing to accept delivery of the U696CL mobile devices and refusing to compensate Unimax its contractual price of $61.40 for 427,500 U696CL mobile devices." Dkt. No. 1 ¶ 4.16.[3] T-Mobile argues this allegation can never support a breach of contract claim because "the contract explicitly authorized T-Mobile to cancel purchase orders." Dkt. No. 17 at 10. The Court agrees with T-Mobile. *See Pontiler S.A. v. OPI Prod. Inc.*, 824 F. App'x 523, 526 (9th Cir. 2020) ("Thus, the agreement expressly provided for Defendants' method of termination, and Plaintiff's claim

---

[3] While the parties focus on what T-Mobile was allowed to do under the contract, Unimax does not identify any contract term that T-Mobile breached. "Failing to identify a breached contractual provision dooms a breach of contract claim." *Haywood v. Amazon.com, Inc.*, No. 2:22-cv-01094-JHC, 2023 WL 4585362, at *4 (W.D. Wash. July 18, 2023) (collecting cases).

ORDER GRANTING MOTION TO DISMISS - 5

that Defendants needed good cause to terminate the contract is without merit."). Specifically, the OEM allowed T-Mobile to "make changes to any Purchase Order" "without penalty, additional cost or liability." Dkt. No. 1-1 at 30. The OEM specifies "without limitation" that these changes can include "cancelling or moving a Specified Delivery Date." *Id.* To the extent Unimax argues T-Mobile should have paid for the cancelled POs, it is undisputed that Unimax never delivered the products, thus T-Mobile's obligation to pay for the products was never triggered. *See* Dkt. No. 1-1 at 4 (MSA § 2.2(a)). T-Mobile's actions were thus explicitly allowed under the contract and cannot support a breach of contract claim.

Unimax's arguments to the contrary are unavailing. First, Unimax inexplicably argues that the OEM is not signed and therefore cannot support T-Mobile's contractual defense. Dkt. No. 20 at 7. The OEM is signed. Dkt. No. 1-1 at 3. Moreover, at the motion-to-dismiss stage, the Court assumes all allegations are true, and Unimax alleges the MSA, which incorporates the OEM, was signed. Dkt. No. 1 ¶ 3.3.

Second, Unimax argues that certain undefined "terms" in the MSA and OEM are illusory "to the extent it releases T-Mobile from its contractual and tortious damages."[4] Dkt. No. 1 ¶ 4.8, Dkt. No. 20 at 6–7. Unimax fails to explain how this argument saves its breach of contract claim. Unimax does not specify whether it seeks to void the entire contract by virtue of this argument or whether it attacks only the provisions that pertain to T-Mobile's cancellation rights. Regardless, there is no authority for finding either the OEM or the MSA illusory. In fact, two of the cases relied on by Unimax found similar contract terms, allowing cancellation of POs (Dkt. No. 1-1 at 30 (OEM § 3.1(c))) and non-payment of orders when the products were not delivered (*id.* at 4

---

[4] In its complaint for declaratory judgment, Unimax also argues the contract is "unconscionable." Dkt. No. 1 ¶ 4.8. Unimax does not provide any allegation, argument, or authority for how the contract here could be unconscionable, or how such a finding would impact the Court's decision on the motion to dismiss.

ORDER GRANTING MOTION TO DISMISS - 6

(MSA § 2.2(a))),[5] enforceable and not illusory.  *See* Dkt. No. 20 at 6.  In *SAK & Associates v. Ferguson Construction, Inc.*, 357 P.3d 671 (Wash. Ct. App. 2015), the court found a contract allowing termination for convenience enforceable when it required written notice and payment for any completed work.  And in *Omni Group, Inc. v. Seattle-First Nat'l Bank*, 645 P.2d 727 (Wash. Ct. App. 1982), the court enforced a contract term allowing a party to terminate the contract only after satisfaction of certain conditions precedent.  Here, T-Mobile could not accept delivery of the phones and then refuse to pay; T-Mobile could only cancel the POs before the phones were delivered and with written notice to Unimax.  Under the authority provided by Unimax, neither contract is illusory.

Third, Unimax argues that the OEM only allows T-Mobile to cancel or move the Specified Delivery Date, not cancel a PO in its entirety.  Dkt. No. 20 at 8.  Unimax's argument is not supported by the contractual language.  The section entitled "Modifications to Purchase Orders" states that T-Mobile can "make changes to any Purchase Order."  No. 1-1 at 29 (OEM § 3.1(a)).  The provision then explains that these changes include, "without limitation," "cancelling or moving a Specified Delivery Date." *Id.*  The Specified Delivery Date is defined as "the required date of Product delivery."  Dkt. No.1-1 at 30 (OEM § 3.1(c)).  Further, under the MSA, payment is not required until after the product is delivered and accepted by T-Mobile. Dkt. No. 1-1 at 4 (MSA § 2.2(a)).  Thus, cancelling a Specified Delivery Date necessarily includes cancelling the PO associated with that Delivery Date, which then relieves T-Mobile of its obligation to pay.

---

[5] While Unimax fails to explicitly identify the terms it deems illusory, the Court assumes these two terms are the at-issue contract sections as Unimax does not identify any other terms in its briefing.  *See generally* Dkt. No. 20.

Unimax cites no provision of the contract that would require T-Mobile to pay for products that were never delivered and accepted.[6]

Fourth, Unimax argues that T-Mobile's reliance on *Amazon.com Services LLC v. Paradigm Clinical Research Institute, Inc.*, 631 F. Supp. 3d 950 (W.D. Wash. 2022) is erroneous because the contract in that case specifically allowed cancellation of POs. Dkt. No. 20 at 8–10. Unimax is correct that the contractual language in *Paradigm* is different than the language at issue here and provided that Amazon could "terminate or modify all or any portion of this Purchase Order." 631 F. Supp. 3d at 967. But this difference does not make *Paradigm* inapplicable because, as explained above, the contract language here also allows cancellation and modification of POs. Even if *Paradigm* did not apply, T-Mobile has cited at least two other cases which support dismissing the breach of contract claim that Unimax does not address or distinguish. *See* Dkt. No. 17 (citing *Haywood*, 2023 WL 4585362 at *4 ("Courts in the Ninth Circuit have routinely held that a breach of contract claim is not legally cognizable when based on conduct that the contract permits.") and *Pontiler*, 824 F. App'x 523 (dismissing breach of contract claim when "the agreement expressly provided for Defendants' method of termination"). Because T-Mobile's actions were explicitly allowed under the contract, Unimax cannot bring a breach of contract claim.

To the extent Unimax attempts to bring a separate claim for violating the duty of good faith and fair dealing, it is also dismissed because the only actions complained of are expressly allowed under the contract. *See Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991) ("As a matter of law, there cannot be a breach of the duty of good faith when a party simply stands on its rights to require performance of a contract according to its terms."). Unimax's argument that breach of

---

[6] Notably, T-Mobile also explicitly retains the right to cancel POs under the MSA without cause with thirty days' notice. Dkt. No. 1-1 at 10 (MSA § 8.3) ("T-Mobile may terminate this Agreement, any Addendum or Order, at any time, without cause, by giving Supplier thirty (30) days' written notice."); *id.* at 16 (MSA Exhibit A Definitions) (defining Order as "a SOW or purchase order to procure Services or Deliverables under this Agreement").

ORDER GRANTING MOTION TO DISMISS - 8

an express term of a contract is not necessary to show a violation of good faith and fair dealing (Dkt. No. 20 at 9) misses the point. Unimax does not provide any authority for the proposition that a party violates the implied duty while exercising an express contractual remedy.

Because the contract permits T-Mobile to cancel POs for products not yet received, any attempt to amend the breach of contract claim would be futile. As a result, the Court will not allow leave to amend. *Haywood*, 2023 WL 4585362, at *11 ("Amending the breach of contract claim would be futile because this claim seeks to hold Amazon liable for conduct—removing Plaintiff's reviews and revoking Plaintiff's review privileges—that the Conditions and Guidelines expressly permitted."). For the same reason, the Court denies leave to amend any claim alleging a breach of the duty of good faith and fair dealing.

**D.     The Misrepresentation Claim Is Dismissed with Leave to Amend.**

Unimax alleges that Casey Ryan's statement in January 2023 that T-Mobile would accept delivery of the at-issue POs was either a fraudulent misrepresentation or a negligent misrepresentation. Dkt. No. 1 ¶ 4.2–23. T-Mobile argues that in addition to failing to adequately plead either cause of action, each claim fails because statements of future performance are not actionable. Dkt. No. 17 at 17–18. Again, the Court agrees.

To plead a claim for fraudulent misrepresentation, Unimax must plead the following elements:

> (1) representation of an existing fact, (2) materiality, (3) falsity, (4) the speaker's knowledge of its falsity, (5) intent of the speaker that it should be acted upon by the plaintiff, (6) plaintiff's ignorance of its falsity, (7) plaintiff's reliance on the truth of the representation, (8) plaintiff's right to rely upon the representation, and (9) damages suffered by the plaintiff.

*Emerson v. Island Cnty.*, 371 P.3d 93, 100 (Wash. Ct. App. 2016). Because this claim sounds in fraud, Unimax must also "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Specifically, the complaint must identify "what is false or misleading about

ORDER GRANTING MOTION TO DISMISS - 9

the statement, and why it is false." *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (cleaned up).

To plead a negligent misrepresentation, Unimax must plead facts supporting a plausible claim that

> (1) the defendant supplied information for the guidance of others in their business transactions that was false, (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in his business transactions, (3) the defendant was negligent in obtaining or communicating the false information, (4) the plaintiff relied on the false information, (5) the plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff damages.

*Austin v. Ettl*, 286 P.3d 85, 89 (2012) (citing *Ross v. Kirner*, 172 P.3d 701 (2007)).

First, Unimax fails to allege facts to support either cause of action, even under Rule 8's "short and plan statement" standard. *See* Dkt. No. 1 ¶¶ 4.22–4.25. Unimax's misrepresentation claim is the exact "threadbare recitals of the elements of a cause of action" prohibited under *Iqbal*. 556 U.S. at 678. Most notably, the complaint includes no factual allegations to support the claim that "Casey Ryan, either knew or negligently represented" that T-Mobile would accept the products on the outstanding POs. Dkt. No. 1-1 ¶ 4.23.

Second, T-Mobile seeks dismissal of this claim because "statements of future performance are not valid grounds for a fraudulent or negligent misrepresentation claim." Dkt. No. 17 at 17. Unimax does not dispute that Casey Ryan's statement was a future promise, nor distinguish T-Mobile's authority on this point. Dkt. No. 20 at 12 ("T-Mobile made a representation it would follow through with the acceptance and payment of Unimax phones."). The Court agrees that as currently pleaded, Unimax alleges only that Casey Ryan's statements concerned T-Mobile's future fulfillment of the POs. These statements are insufficient to serve as the basis of either a fraudulent misrepresentation or negligent misrepresentation claim. *Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 500 P.3d 119, 136 (Wash. 2021) ("A fraudulent misrepresentation

ORDER GRANTING MOTION TO DISMISS - 10

claim and a negligent misrepresentation claim both require the misrepresentation to be one of existing fact; a promise of future performance is therefore not an actionable statement."), *rev'd and remanded on other grounds*, 598 U.S. 771 (2023). For both of these reasons, Unimax's claims for misrepresentation fail.

T-Mobile asks the Court to deny leave to amend "because all of Unimax's claims are based on T-Mobile's cancellation of purchase orders—an act that is expressly permitted by the parties' contract." Dkt. No. 17 at 19. The Court agrees the gravamen of the misrepresentation claims seems to be that T-Mobile ultimately canceled the POs, which is not actionable. *See PCF Ins. Servs. of the W., LLC v. Fritts*, No. C23-1468-JCC, 2024 WL 1299954, at *4 (W.D. Wash. Mar. 27, 2024) (applying Washington's independent tort doctrine to dismiss tort). But the misrepresentation claims are dismissed because they are insufficiently pleaded and seem to be based solely upon representations of future performance, yet T-Mobile does not explain why these particular issues cannot be cured by amendment.

The Ninth Circuit has cautioned that "dismissal without leave to amend is proper only in 'extraordinary' cases." *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) (quoting *United States v. City of Redwood*, 640 F.2d 963, 966 (9th Cir. 1981)). It is well-established that "in dismissing for failure to state a claim under Rule 12(b)(6), a district court should grant leave to amend … unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (cleaned up). The Court observes it is a close question whether Unimax can allege any set of facts, apart from the cancellation of the POs, that would entitle it to relief. And the operative complaint does not adequately explain the nature of Casey Ryan's alleged statements, the extent to which Unimax relied upon them, or whether such reliance was (or could ever be) reasonable. However, because it is not clear from the briefing that there is "no set of facts" that might entitle Unimax to relief for its alleged reliance

ORDER GRANTING MOTION TO DISMISS - 11

on T-Mobile's representations concerning the outstanding orders, and applying the "generous" standard required for requests for leave to amend, the Court will permit Unimax to attempt again to state this claim. *See Balistreri*, 901 F.2d at 701. To the extent that Unimax again alleges only facts that amount to the cancellation of the POs, this claim will be dismissed with prejudice.

E.   **The Intentional Interference with Prospective Economic Advantage/Inducing Contract Breach Claim Is Dismissed with Leave to Amend.**

In Washington, "a claim for tortious interference with a contractual relationship or business expectancy requires five elements": (1) a valid contractual relationship or business expectancy; (2) defendants knew of that relationship or expectancy; (3) "intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage." *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 930 P.2d 288, 300 (Wash. 1997). T-Mobile argues that Unimax fails to sufficiently plead each of these elements. Dkt. No. 17 at 13–15. Unimax responds by merely reiterating the relevant allegations from its complaint. Dkt. No. 20 at 11–12.

The Court agrees that Unimax insufficiently pleads each element. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.") (cleaned up). For the first element, a valid contract or business expectancy, Unimax merely alleges it owes its supplier, Great Talent, "millions of dollars." Dkt. No. 1 ¶ 3.42. Nowhere does Unimax allege what its relationship with Great Talent is (or was), or whether any contract between Unimax and Great Talent exists.

Likewise for the second element. Unimax alleges "T-Mobile had knowledge that Unimax had a business relationship with Great Talent and potential future dealings with Great Talent." *Id.* ¶ 4.19. Unimax does not allege any facts supporting T-Mobile's purported knowledge of the unspecified relationship between Unimax and Great Talent.

The third element, intentional interference that causes or induces the breach or termination of the relationship, is not pleaded at all. Unimax alleges Casey Ryan, "intentionally obtained a position at T-Mobile for the purposes of terminating" the POs. Dkt. No. 1 ¶ 3.41. And that Casey Ryan "misrepresented to Unimax it would be moving forward with accepting the shipment and delivery" of the POs for the U696CL mobile devices. *Id.* ¶ 3.42. Unimax does not allege any facts connecting Casey Ryan's employment or his statements with the breach or termination of Unimax's unspecified relationship with Great Talent.

The fourth element requires a showing that the intentional act was done for an improper purpose or by improper means. "To be improper, interference must be wrongful by some measure beyond the fact of the interference itself, such as a statute, regulation, recognized rule of common law, or an established standard of trade or profession." *Moore v. Com. Aircraft Interiors, LLC*, 278 P.3d 197, 200 (2012). Unimax's complaint merely alleges "[o]n information and belief, T-Mobile interference, through Casey Ryan, was for an improper purpose or by improper means and was the proximate cause of damages sustained by Unimax." Dkt. No. 1 ¶ 4.21. This allegation is insufficient to plead an improper purpose as it lacks any detail.

The fifth element is damages. While Unimax alleges it sustained damages (*id.*), the only damages specified in the complaint related to Great Talent are the "millions of dollars for the manufacturing, development and the continued storage of these U696CL devices." Dkt. No. 1 ¶ 3.42. Unimax does not explain how these damages arose from the alleged intentional interference as opposed to T-Mobile's proper cancellation of the POs. Thus, Unimax fails to plead the damages element of the intentional interference claim.

Because Unimax fails to allege sufficient facts to support any element of its tortious interference with a business expectancy claim, this claim is dismissed.

ORDER GRANTING MOTION TO DISMISS - 13

Again, T-Mobile asks the Court to deny leave to amend due to this claim's connection to the contract claim. Dkt. No. 17 at 19. T-Mobile is correct that any argument that cancellation of the POs improperly interfered with Unimax's relationship with Great Talent fails and cannot be repleaded. T-Mobile's exercise of its contractual rights cannot be "improper." *See Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.,* 935 P.2d 628 (1997) (Wash. Ct. App. 2012) (finding actions could not be improper when dealership contracts unequivocally reserved tire company's right to act); *Birkenwald Distrib. Co. v. Heublein, Inc.*, 776 P.2d 721, 727 (Wash. Ct. App. 1989) (affirming dismissal of tortious interference claim where defendant's "means were not wrongful because [defendant] had a contractual right to select a distributor of its choice to replace [plaintiff]").

Despite the patent insufficiency of the claim as currently pleaded, as detailed above, the Court is again required to apply a "generous" standard to Unimax's request to amend. The Court will grant such leave, only because it is unclear from the briefing whether Unimax is currently alleging (or could ever allege) any improper action by T-Mobile apart from the cancellation of the POs. Again, as with the misrepresentation claim, Unimax is cautioned that merely repackaging its failed contract claim as a tort claim will not survive future dispositive motions. With this admonition in mind, the Court cautiously grants Unimax leave to amend.

**F.      The Declaratory Judgment Claim Is Dismissed.**

Unimax asks this Court to use its authority under the Declaratory Judgment Act (28 U.S.C. § 2201(a)) to declare "whether the cancellation of the POs is enforceable" or a breach of the contract and to declare "whether terms contained in the Master Agreement and its addendums are unconscionable and/or illusory." Dkt. No. 1 ¶¶ 4.1, 4.7–4.8.

Requests for declaratory judgment that merely impose the remedies provided for in other claims are duplicative and may be dismissed on that basis. *Swartz v. KPMG LLP*, 476 F.3d 756,

766 (9th Cir. 2007). Unimax's declaratory judgment cause of action seeks identical relief to its breach of contract claim, and the Court has dismissed that claim with prejudice. Accordingly, the Court also dismisses the declaratory judgment claim without leave to amend.

### III.  CONCLUSION

For these reasons, the Court GRANTS T-Mobile's motion to dismiss. Dkt. No. 17. The breach of contract and declaratory judgment claims are dismissed without leave to amend. Unimax may file an amended complaint on the two tort claims by June 14, 2024.

Dated this 31st day of May, 2024.

*Kymberly K. Evanson*

Kymberly K. Evanson
United States District Judge