1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNIMAX COMMUNICATIONS LLC, | CASE NO. C23-01830-KKE |
| Plaintiff, | ORDER GRANTING DEFENDANT'S |
| v. | SECOND MOTION TO DISMISS |
| T-MOBILE USA INC, | |
| Defendant. | |

      Unimax Communications LLC ("Unimax") sued T-Mobile USA Inc. ("T-Mobile") for over $27,000,000 in damages allegedly resulting from the improper cancellation of three sets of purchase orders ("POs") for mobile phones.  Because the parties' contract explicitly allowed T-Mobile to cancel the orders, the Court granted T-Mobile's prior motion to dismiss.  The Court granted Unimax leave to amend its two tort claims but cautioned that any tort claim based on the cancellation of the POs would be dismissed.  Despite the Court's admonition, Unimax's first amended complaint ("FAC") pleads tort claims that are again based on T-Mobile's proper exercise of its contractual rights.  As such, both claims fail and T-Mobile's motion to dismiss is granted.

//

//

//

ORDER GRANTING DEFENDANT'S SECOND MOTION TO DISMISS - 1

## I.    BACKGROUND[1]

### A.    Factual Background[2]

Unimax "is a manufacturer and supplier of mobile devices[.]" Dkt. No. 27 ¶ 1.1.  Unimax and T-Mobile entered into a Master Service Agreement ("MSA") with an effective date of May 28, 2021, wherein Unimax would supply products, as described in a "Product Supplement," to T-Mobile.  Dkt. No. 27 ¶¶ 3.3, 3.5; Dkt. No. 1-1 at 2, 75–80.[3]  The MSA includes multiple addenda and attachments, including the Original Equipment Manufacturing and Supply Addendum ("OEM").  Dkt. No. 1-1 at 26–47.  One of the provisions in the OEM states:

> (c) Modifications to Purchase Orders. T-Mobile will have the right, without penalty, additional cost or liability, to make changes to any Purchase Order delivered to Supplier including, without limitation, cancelling or moving a Specified Delivery Date. However, changes requiring volume increases shall require a new Purchase Order issued [sic] and will require separate confirmation of Supplier. Change requests must be made in writing (the "Modification Notice") and delivered in the same manner as a Purchase Order.

*Id.* at 30 (OEM § 3.1(c)).  Finally, the parties agreed that "[a]cceptance [of the product] by T-Mobile shall be a condition precedent to the right of Supplier to receive payment in full[.]"  *Id.* at 4 (MSA § 2.2(a)).

Between May 2021 and December 2021, T-Mobile issued multiple POs to Unimax for U696CL mobile devices.  Dkt. No. 27 ¶¶ 3.6–3.7.  This dispute arises from POs dated September

---

[1] The Court assumes for purposes of a motion to dismiss that the facts alleged in the FAC are true.  *Edmonson v. City of Martinez*, 17 F. App'x 678, 679 (9th Cir. 2001).

[2] A fuller recitation of the facts underlying this dispute can be found in the Court's previous order granting T-Mobile's motion to dismiss.  Dkt. No. 25 at 1–3.  Even though that recitation was based on Unimax's original complaint, Unimax's FAC has not changed the factual allegations in any meaningful way.  *See* Dkt. No. 29 (redline of FAC compared to original complaint).

[3] The FAC "incorporates by reference" the exhibits filed with the initial complaint.  Dkt. No. 27 at 1.  This violates Local Rule 15(a) which states amended pleadings "must not incorporate by reference any part of the preceding pleading, including exhibits."  Local Rules W.D. Wash. LCR 15(a).  That said, the Court will consider the exhibits (Dkt. No. 1-1) incorporated into the FAC for purposes of this motion.

ORDER GRANTING DEFENDANT'S SECOND MOTION TO DISMISS - 2

2021, November 2021, and December 2021.  Dkt. No. 1-1 at 89–134 (providing copies of the cancelled POs).

In June 2022, T-Mobile informed Unimax of "reports of possible power issues" with the U696CL devices that would require an investigation and a hold on shipping further devices.  Dkt. No. 27 ¶ 3.7. From that notification through October 2022, the parties exchanged information, analyzed the devices, and determined "there was a Power Amplifier Issue." *Id.* ¶ 3.27.

In January 2023, during the ongoing investigation, Unimax met with "Casey Ryan, Principal Product Manager at T-Mobile and Brett Madison, T-Mobile OEM Senior Manager" at a tradeshow in Las Vegas.  Dkt. No. 27 ¶ 3.29.  Unimax alleges that "T-Mobile representatives represented to Unimax they were going to [be] moving forward with the PO[s] for 427,560 U696CL mobile devices."  *Id.*   After this event, T-Mobile continued to request additional information and testing.  *Id.* ¶¶ 3.29–3.42.  Finally, on May 4, 2023, "T-Mobile cancelled the outstanding POs for 427,500 Unimax U696CL devices."  *Id.* ¶ 3.43.  On May 16, 2023, T-Mobile sent a letter confirming cancellation of the 427,500 U696CL phones and citing to OEM section 3.1(c).  *Id.* ¶ 3.45, Dkt. No. 1-1 at 136.

Unimax alleges that Casey Ryan "intentionally obtained a position at T-Mobile for the purposes of terminating T-Mobile's PO[s] for 427,500 Unimax U696CL devices."  Dkt. No. 27 ¶ 3.49.  Unimax claims that T-Mobile then "award[ed] the contract to Schok" (*id.* ¶ 3.53) and that Casey Ryan then left T-Mobile to work at Schok (*id.* ¶ 5.45).

Unimax argues that "based on the representation and assurances from T-Mobile that it [would] accept T-Mobile's POs for 427,500 Unimax U696CL devices, [Unimax] owes its supplier, Great Talent[,] millions of dollars for the manufacturing, development and continued storage of these U696CL devices."  Dkt. No. 27 ¶ 3.50.

**B.      Procedural Background**

Unimax sued T-Mobile on November 28, 2023, alleging four causes of action: declaratory judgment, breach of contract, intentional interference with prospective economic advantage/inducing breach of contract, and fraudulent and/or negligent misrepresentation.  Dkt. No. 1 ¶¶ 4.1–4.25.  Upon T-Mobile's motion to dismiss, the Court dismissed each cause of action, allowing Unimax to replead its claims for intentional interference and misrepresentation.  Dkt. No. 25 at 1.  The Court dismissed the breach of contract claim because "the contract permits T-Mobile to cancel POs for products not yet received[.]" *Id.* at 9.  As the declaratory judgment claim sought a ruling regarding the appropriateness of the cancellation of the POs, the Court also dismissed that claim.  *Id.* at 14–15.  The Court found that Plaintiff insufficiently pled the misrepresentation and intentional interference with business expectancy claims.  *Id.* at 10–14.  And while the Court allowed Unimax to replead the tort claims, the Court warned that any amended claims based on T-Mobile's cancellation of the POs would be dismissed.  *Id.* at 11–12, 14.  The Court denied Unimax's motion for reconsideration because the "motion merely reiterates arguments the Court already considered or inappropriately posits new theories without authority."  Dkt. No. 30 at 1.

On June 14, 2024, Unimax filed the FAC, repleading claims for intentional interference with prospective economic advantage/inducing breach of contract and fraudulent or negligent misrepresentation.  Dkt. No. 27.  On May 31, 2024, T-Mobile filed this motion to dismiss the FAC.  Dkt. No. 28.  Unimax responded (Dkt. No. 31), and T-Mobile filed a reply (Dkt. No. 32).  Neither party requested oral argument.  The matter is ripe for the Court's consideration.

//

//

//

//

ORDER GRANTING DEFENDANT'S SECOND MOTION TO DISMISS - 4

## II.   ANALYSIS

### A.   Legal Standard

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court examines the complaint to determine whether, if the facts alleged are true, the plaintiff has stated "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

"If a motion to dismiss is granted, a court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts." *Chinatown Neighborhood Ass'n v. Harris*, 33 F. Supp. 3d 1085, 1093 (N.D. Cal. 2014).

### B.   Unimax's Intentional Interference with Business Expectancy or Contract Claim Is Dismissed.

In Washington, "a claim for tortious interference with a contractual relationship or business expectancy requires five elements": (1) a valid contractual relationship or business expectancy; (2) defendants' knowledge of that relationship or expectancy; (3) "intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage." *Leingang v. Pierce Cnty. Med. Bureau, Inc*., 930 P.2d 288, 300 (Wash. 1997).  The Court dismissed Unimax's claim for insufficiently pleading each element (Dkt. No. 25 at 12–13) and because "any argument that cancellation of the POs improperly interfered with Unimax's relationship with Great Talent fails and cannot be repleaded." *Id*. at 14.  The Court granted Unimax leave to amend to allege any improper actions separate from the PO cancellation.  The Court cautioned Unimax "that merely

repackaging its failed contract claim as a tort claim will not survive future dispositive motions." *Id.*

Rather than plead additional facts, Unimax revised this cause of action to rely even more explicitly on the exact legal theory the Court previously rejected.  The FAC now alleges, "T-Mobile's cancellation of PO[s] caused the termination of the business relationship as Unimax [] has gone out of business." Dkt. No. 27 ¶ 4.21.  Again, T-Mobile's exercise of its contractual rights cannot be "improper."  *See Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 935 P.2d 628, 636 (1997) (Wash. Ct. App. 2012) (finding actions could not be improper when dealership contracts reserved tire company's right to act); *Birkenwald Distrib. Co. v. Heublein, Inc.*, 776 P.2d 721, 727 (Wash. Ct. App. 1989) (affirming dismissal of tortious interference claim where defendant's "means were not wrongful because [defendant] had a contractual right to select a distributor of its choice to replace [plaintiff]").

Unimax's intentional interference with a business expectancy or contract claim is dismissed.

**C.**      **Unimax's Misrepresentation Claims Are Dismissed.**

To plead a claim for fraudulent misrepresentation, Unimax must plead these elements:

> (1) representation of an existing fact, (2) materiality, (3) falsity, (4) the speaker's knowledge of its falsity, (5) intent of the speaker that it should be acted upon by the plaintiff, (6) plaintiff's ignorance of its falsity, (7) plaintiff's reliance on the truth of the representation, (8) plaintiff's right to rely upon the representation, and (9) damages suffered by the plaintiff.

*Emerson v. Island Cnty.*, 371 P.3d 93, 100 (Wash. Ct. App. 2016).  Because this claim sounds in fraud, Unimax must also "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  The complaint must identify "what is false or misleading about the statement, and why it is false."  *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (cleaned up).

To plead a negligent misrepresentation claim, Unimax must allege facts supporting a plausible claim that

> (1) the defendant supplied information for the guidance of others in their business transactions that was false, (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in his business transactions, (3) the defendant was negligent in obtaining or communicating the false information, (4) the plaintiff relied on the false information, (5) the plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff damages.

*Austin v. Ettl*, 286 P.3d 85, 89 (Wash. Ct. App. 2012) (citing *Ross v. Kirner*, 172 P.3d 701 (Wash. 2007)).

The Court dismissed Unimax's misrepresentation claims because "as currently pleaded, Unimax alleges only that Casey Ryan's statements concerned T-Mobile's future fulfillment of the POs. These statements are insufficient to serve as the basis of either a fraudulent misrepresentation or negligent misrepresentation claim." Dkt. No. 25 at 10 (citing *Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 500 P.3d 119, 136 (Wash. 2021), *rev'd and remanded on other grounds*, 598 U.S. 771 (2023)).

The FAC alleges T-Mobile misrepresented: "that it would accept delivery of purchase order[s.]" Dkt. No. 27 ¶ 4.33. Again, this statement is a future promise that cannot sustain a misrepresentation claim, whether negligent or fraudulent. *Glacier Nw.*, 500 P.3d at 136 ("A fraudulent misrepresentation claim and a negligent misrepresentation claim both require the misrepresentation to be one of existing fact; a promise of future performance is therefore not an actionable statement.").

Unimax argues that promises of future performance can support a tort claim "when it can be shown that the promisor never intended to perform." Dkt. No. 31 at 12.[4] Although some courts

---

[4] Unimax relies on *Aliya Medcare Finance, LLC v. Nickell*, 156 F. Supp. 3d 1105 (C.D. Cal. 2015). But that case was decided under Nevada law and found that the statement at issue, that certain doctors were in-network, was not a future promise, but a representation about present facts. *Id.* at 1124–25.

have recognized this limited exception for misrepresentation claims under Washington law, Unimax fails to show it should apply here. *See Cognizant Worldwide Ltd. v. Barrett Bus. Servs., Inc.*, No. C19-1848-JCC-MLP, 2021 WL 1872427, at \*8 (W.D. Wash. Jan. 29, 2021) (citing *Markov v. ABC Transfer & Storage Co.*, 457 P.2d 535 (Wash. 1996)), *report and recommendation adopted*, No. C19-1848-JCC, 2021 WL 1625245 (W.D. Wash. Apr. 27, 2021); *Ritchie Bros. Auctioneers (Am.) Inc. v. Naem Suid*, No. C17-1481-MAT, 2018 WL 1811353, at \*5 (W.D. Wash. Apr. 17, 2018).  To invoke this exception, Unimax must show T-Mobile "acted without care or concern whether [the promise] will be kept" or "never intended to perform" the future promise. *Cognizant Worldwide*, 2021 WL 1872427, at \*8.  Because such a showing sounds in fraud, even if the claim is for negligent misrepresentation, these allegations must meet Rule 9's heightened pleading standard.  *See Wessa v. Watermark Paddlesports, Inc.*, No. C06-5156 FDB, 2006 WL 1418906, at \*3 (W.D. Wash. May 22, 2006) (applying Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement to a negligent misrepresentation claim of future performance).

Unimax's conclusory statements that "[o]n information and belief the representation that T-Mobile intended to accept delivery was false as it was discovered that these contract[s] went to a third-party[,]" and "[o]n information and belief [] T-Mobile knew that these representations were false" (Dkt. No. 27 ¶ 4.33) are not enough to allege misrepresentation of a future promise.  *See Wessa*, 2006 WL 1418906, at \*3 ("Plaintiff must set forth, as part of the circumstances constituting fraud, an explanation as to why the disputed statement was untrue or misleading when made.").  There are no specific factual allegations to support that, at the time of the alleged misrepresentations in January 2023, T-Mobile did not intend to accept the POs.  In fact, Unimax alleges that for months after this representation, T-Mobile continued to discuss the POs and to request information from Unimax regarding the devices, evidencing an intent to continue with the purchase.  *Id.* ¶¶ 3.30–3.42; *see Wessa*, 2006 WL 1418906, at \*3 ("Hindsight does not render the

ORDER GRANTING DEFENDANT'S SECOND MOTION TO DISMISS - 8

statement of promised performance a falsehood when made.  To survive Rule 9(b) Plaintiffs must allege statements that were untrue when made.").

In sum, Unimax's misrepresentation claims are based on T-Mobile's alleged future promise.  This statement is not actionable and the limited exception to that rule does not apply here.[5]

**D.    The Court Will Not Grant Leave to Amend.**

Unimax does not request leave to re-amend its complaint.  Even if it had, the Court finds leave to amend is inappropriate because any further amendment would be futile as no additional facts can cure the deficiencies in Unimax's legal theories.  *See Short v. Hyundai Motor Co.*, No. C19-0318JLR, 2020 WL 6132214, at *8 (W.D. Wash. Oct. 19, 2020) (denying leave to amend when amendment would be futile and plaintiff already attempted to amend the complaint).

### III.   CONCLUSION

For these reasons, T-Mobile's motion to dismiss is GRANTED.  Dkt. No. 28.  The case is dismissed with prejudice.

Dated this 4th day of October, 2024.

Kymberly K. Evanson
United States District Judge

---

[5] Unimax proffers various additional arguments in opposition to T-Mobile's motion to dismiss the misrepresentation claims.  Dkt. No. 31 at 13–15.  Because Unimax's reliance on statements of future promises dooms these claims, and none of its other arguments cure that dispositive failure, the Court need not sort through the remaining arguments.

ORDER GRANTING DEFENDANT'S SECOND MOTION TO DISMISS - 9